UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PENSION TRUST FUND FOR OPERATING ENGINEERS, *et al.*,

    Plaintiffs,

v.

JOCO GEOSPATIAL COMPANIES, INC., *et al.*,

    Defendants.
_____/

No. C-11-2482 EMC

**ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

**(Docket No. 34)**

    Currently pending before the Court is Plaintiffs Pension Trust Fund for Operating Engineers, F.G. Crosthwaite, and Russell E. Burns's unopposed motion for default judgment against Defendants Joco Geospatial Companies, Inc. and Airborne Geospatial, Inc. Docket No. 34. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion for default judgment.

## I.    FACTUAL & PROCEDURAL HISTORY

    Jolandco, Inc. ("Jolandco") was a participating employer in the ERISA-regulated Pension Trust Fund for Operating Engineers ("Trust") under a collective bargaining agreement. Compl. ¶ 13. In February 2008, Jolandco became delinquent under the bargaining agreement. Compl. ¶ 15. Plaintiffs responded with a lawsuit that resulted in a judgment in favor of Plaintiffs in the amount of $131,718.81. Compl. ¶ 15. This judgment was never paid. Compl. ¶ 22.

    In February 2009, Jolandco made a complete withdrawal from the Trust. Compl. ¶ 16, Docket No. 35 ¶ 8 ("Trento Decl."). As a result of that withdrawal, Jolandco became subject to withdrawal liability under ERISA § 4203. Compl. ¶ 16; 29 U.S.C. § 1383 (2006). Plaintiffs notified

1  Jolandco of its liability in a June 2010 letter, which stated Jolandco's withdrawal liability and
2  proposed a quarterly installment schedule. Compl. ¶ 18; Trento Decl. ¶ 10. While Jolandco had the
3  option of challenging the liability amount, its attempt to request review failed because its request did
4  not comply with ERISA. Compl. ¶ 19. Jolandco never attempted to seek arbitration. Compl. ¶ 19.

5  In August 2010 and November 2010, Jolandco failed to make the withdrawal liability
6  installment payments. Compl ¶ 21. In November 2010, Plaintiffs notified Jolandco that it would
7  accelerate the entire unpaid withdrawal liability pursuant to ERISA and the Trust's Withdrawal
8  Liability Assessment Procedures because there was a substantial likelihood of default due to
9  Jolandco's insolvency and failure to pay the prior judgment. Compl. ¶ 22. Based on Jolandco's
10 continued failure to pay the withdrawal liability, Plaintiffs brought this suit against Jolandco, Joco
11 Geospatial Companies, Inc. ("Joco Geospatial"), and Airborne Geospatial, Inc. ("Airborne
12 Geospatial"). Plaintiffs assert that suit against Defendants Joco Geospatial and Airborne Geospatial
13 is appropriate because all three companies are owned and controlled by Christopher D. Johnson.
14 Compl. ¶¶ 7-9. Thus, the three companies are members of the same control group and may be
15 treated as a single employer for purposes of paying withdrawal liability. Compl. ¶ 3.

16 In response to Plaintiffs' complaint, Johnson attempted to file a pro se answer on behalf of
17 all Defendants. Docket No. 6. However, the answer was a nullity because a corporation cannot be
18 represented pro se. Motion at 4. In August 2011, Johnson informed Plaintiffs that he would not
19 defend the case but instead intended to let the companies default on the suit, and Plaintiffs requested
20 entry of default against Defendants. Docket No. 28; Docket No. 28, Exh. A. Entry of default was
21 entered as to Joco Geospatial and Airborne Geospatial. Docket No. 29. However, entry of default
22 was not entered as to Jolandco because service had not been effected on Jolandco. Docket No. 30;
23 Motion at 5 n.1. Plaintiffs then filed a notice of voluntary dismissal of Jolandco. Docket No. 41;
24 Docket No. 42 ¶ 9.

25 Plaintiffs now seek default judgment against Joco Geospatial and Airborne Geospatial.
26 Motion at 1. Plaintiffs seek to recover $108,254.00 in assessed withdrawal liability, $21,650.80 in
27 liquidated damages, $14,473.41 in interest, $11,976.30 in attorney's fees, and $949.67 in litigation
28 costs, totaling $157,304.18. Defendants have not opposed this motion.

2

## II. DISCUSSION

A. Adequacy of Service of Process

As a preliminary matter, the Court must first "assess the adequacy of the service of process on the party against whom default is requested." *Bd. of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Dec. 29, 2000). Service may be effected upon a corporation in the United States "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). On May 26, 2011, Plaintiffs' process server personally delivered copies of the summons and complaint to parties authorized to accept service on behalf of Defendants Joco Geospatial and Airborne Geospatial *See* Docket Nos. 26, 27, 45. Plaintiffs filed proof of service on June 28, 2011. Docket Nos. 9, 10. The sole shareholder of the companies, Johnson, attempted to answer on behalf of the companies. Docket No. 6. The Court finds that service of process was adequately performed on Defendants.

B. *Eitel* Analysis

Once the Court determines that service was sufficient, the Court must consider the following factors in determining if entry of default judgment is warranted:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Upon entry of default, a court must take as true all factual allegations in the complaint except those related to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

Taking into account the above factors, the Court finds that a default judgment is appropriate under the circumstances. First, Plaintiffs have stated a claim for relief under ERISA based on Jolandco's complete withdrawal from the ERISA-regulated Trust. Compl. ¶ 16; 29 U.S.C. § 1383 (2006). Generally, "businesses under common control are to be treated as a single employer for

purposes of withdrawal liability." *Bd. of Trs. of W. Conference v. H.F. Johnson, Inc.*, 830 F.2d 1009, 1013 (9th Cir. 1987). Under Treasury Regulations § 1.414(c)-2, businesses are under common control where the same five or fewer persons own a controlling interest in each of the organizations that gives them effective control of each organization. Treas. Reg. § 1.414(c)-2 (1994). Once common control is established, ERISA § 4001(b)(1) requires that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." 29 U.S.C. § 1301(b)(1) (2006). In the instant case, Plaintiffs have alleged that Johnson is the sole operator and owner of Jolandco and Defendants Joco Geospatial and Airborne Geospatial. Compl. ¶ 3. Defendants are thus of the same control group and may be treated as a single employer, making Defendants jointly and severally liable for Jolandco's withdrawal liability. Docket No. 42 ¶ 2 ("Ostil Decl."); *see, e.g.*, *Brentwood Fin. Corp. v. W. Conference of Teamsters Pension Trust Fund*, 902 F.2d 1456, 1458 n.2; *I.A.M. Nat'l Pension Fund v. TMR Realty Co.*, 431 F. Supp. 2d 1, 11 (D.D.C. 2006) ("Importantly, the withdrawal liability provisions of ERISA apply to all members of a control group as a single employer. Each member of the control group is joint and severally liable for the purposes of withdrawal liability . . . .").

Second, Plaintiffs will likely be prejudiced absent a default judgment, as they will likely be left without a remedy. *Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiffs' motion [for default judgment] would leave them without a remedy."). Third, the sum of money at stake supports default judgment as it is based on Jolandco's withdrawal liability, and other damages required under ERISA § 502(g)(2). 29 U.S.C. § 1132(g)(2) (2006). Finally, because Defendants have not filed an answer to the complaint and have instead asserted that it will not defend this action, it is unlikely that there will be a dispute concerning material facts or that the default was due to excusable neglect. *See* Docket No. 28, Exh. A; Ostil Decl. ¶¶ 4, 7.

Accordingly, Plaintiffs are entitled to a default judgment, and the Court now turns to the issue of damages.

C.  Damages and Other Relief

ERISA § 502(g)(2) provides that:

> In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan–
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of–
>    (i) interest on the unpaid contributions, or
>    (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). In the instant case, Plaintiffs seek damages totaling $157,304.18. This includes $108,254.00 in withdrawal liability, $21,650.80 in liquidated damages, $14,473.41 in interest, $11,001.30 in actual attorney's fees, $975.00 in estimated attorney's fees related to the hearing on this motion, and $949.67 in litigation costs. To establish damages, Plaintiffs must provide adequate evidence supporting the amount requested.

1.  Withdrawal Liability

Plaintiffs have provided adequate evidence supporting the amount of withdrawal liability requested. Withdrawal liability is calculated according to ERISA § 4211. 29 U.S.C. § 1391 (2006). The presumptive method "bases withdrawal liability on the proportion of total employer contributions to the plan made by the withdrawing employer during certain 5-year periods. In essence, the withdrawal liability imposes on the withdrawing employer a share of the unfunded vested liability proportional to the employer's share of contributions to the plan during the years of its participation." *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602 (1993); *see also* 29 U.S.C. § 1391(b). The presumptive method is required for building and construction industry pension plans. Docket No. 35, Exh. D; 29 U.S.C. § 1391(b)(1)(A). Based on Jolandco's 2009 withdrawal, Plaintiffs determined (1) Jolandco's contributions to the Trust from January 2004 to December 2008, (2) Jolandco's share of total Trust Plan contributions from January 2004 to

1  December 2008, and (3) Jolandco's allocated share of the unfunded vested benefit liabilities.

2  Docket No. 35, Exh. D; Trento Decl. ¶ 9. Based on this formula, trust liability of $108,254.00 was

3  assessed against Jolandco. Docket No. 35, Exh. E. As members of the same control group,

4  Defendants are liable for $108,254.00 in withdrawal liability.

5        Accordingly, the Court awards $108,254.00 in withdrawal liability.

6        2.    <u>Interest</u>

7        Plaintiffs have provided adequate evidence supporting the amount of interest sought.

8  Plaintiffs seek 10% interest that has accrued from August 1, 2010 through December 2, 2011.

9  Motion at 1. The 10% interest rate is based on the Delinquency Collection Procedures adopted by

10 the Trust Plan, which states that "[e]ffective March 1, 2010, interest shall be charged at 10% per

11 annum on delinquent contributions." Docket No. 35, Exh. C. The August 1, 2010 date is based on

12 ERISA § 4219(c)(5), which "in the event of a default, a plan sponsor may require immediate

13 payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on

14 the total outstanding liability from the due date of the first payment which was not timely made." 29

15 U.S.C. 1399(c)(5) (2006). Based on the statutory provision and the Trust Plan's terms, Plaintiffs

16 seek $14,473.41 in interest that has accrued from August 1, 2010 through the original hearing date

17 of December 2, 2011. Motion at 8; Trento Decl. ¶ 12.

18       Accordingly, the Court awards $14,473.41 in interest.

19       3.    <u>Liquidated Damages</u>

20       Plaintiffs have provided adequate evidence supporting the amount of liquidated damages

21 sought. Plaintiffs seek liquidated damages of 20% of the principal amount. Motion at 1. Under §

22 502(g)(2), liquidated damages may be awarded when: (1) the employer is delinquent at the time the

23 action is filed, (2) the court enters a judgment against the employer, and (3) the plan provides for an

24 award of liquidated damages. 29 U.S.C. § 1132(g)(2)(C); *see also Nw. Adm'rs, Inc. v. Albertson's,*

25 *Inc.*, 104 F.3d 253, 258 (9th Cir. 1996). In the instant case, Defendants are currently in default of

26 the entire unpaid withdrawal liability, as no payments have been made thus far. The Trust Plan

27 provides for an award of liquidated damages, as the Trust Plan's delinquency collection procedures

28 state that liquidated damages "are assessed at 10% of contributions due, effective January 1, 2010

1  for delinquencies incurred thereafter which remain unpaid, on the 25th of the month due.  Upon
2  litigation, [liquidated damages] are assessed at 20% of contributions remaining unpaid at time of
3  filing." Docket No. 35, Exh. C.  As litigation has proceeded in this case, the Trust Plan permits
4  Plaintiffs to assess a 20% liquidated damages penalty on Defendants; Trento Decl. ¶ 7.

Pursuant to this entry of default judgment, the Court awards $21,650.80 in liquidated damages.

### 4. Attorney's Fees

Under § 502(g)(2), Plaintiffs are entitled to an award of reasonable attorney's fees and costs of the action.  29 U.S.C. § 1132(g)(2)(D).  Plaintiffs seek $11,001.30 in attorney's fees for work done through this motion, as well as $975.00 in estimated fees for work done in preparation for and attendance at hearing of this motion.  Motion at 1.

The "starting point to determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 431 U.S. 424, 433 (1983).  The party seeking the award must submit evidence supporting the hours worked and rates claimed, and where the party fails to submit adequate evidence, this lodestar amount awarded may be reduced. *Id.*

#### a. Hourly Rate

In this case, Plaintiffs' counsel's billing rates are $195.00/hr for the associate attorney, and $115.00/hr for the paralegals.  In determining the reasonableness of rates, the Court may compare the requested rate with the prevailing rate in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986).  Thus, "billing rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).

The Court finds that these billing rates are reasonable, based on a comparison of Plaintiffs' requested rates with those awarded in other ERISA cases in the Northern District of California. Motion at 10-11; *see also Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp.

2d 377-78 (N.D. Cal. 2005) (recommending approval of $210.00/hr associate attorney fee in default judgment action to collect delinquent contributions); *Trs. on Behalf of Teamsters Ben. Trust v. Casey's Office Moving Servs.*, No. C-05-4157 MHP (EMC), 2007 WL 1031320, at *6 (N.D. Cal. Apr. 3, 2007) (approving hourly rates of $250.00/hr in a trust collection action under ERISA); *Trs. of the Bricklayer Local No. 7 Pension Trust v. Gentry Masonry*, No. C-09-04604 JCS, 2010 U.S. Dist. LEXIS 62433, at *15 (N.D. Cal. 2010) (recommending approval of $295.00/hr in default judgment action to collect unpaid withdrawal liability).

b. <u>Hours Charged</u>

Plaintiffs seek attorney's fees for 19.9 hours of work done by associate attorneys, and 61.92 hours of work done by paralegals. Docket No. 36, Exh. F. These hours were spent on actions including:

> tracking of statutory deadlines applicable to withdrawal liability; preparation of the Complaint, Summons, Certificate of Interested Parties, and notice to PBGC; correspondence with Trustees, the Trust's third party administrator, and the Union district representatives; legal research; review of investigative documents; analysis of control group members; effectuating service on defendants; review of Defendants' improper appearance and answer; preparation of the Declination to Proceed Before a U.S. Magistrate Judge; preparation of Request for Default; preparation of this Motion for Default Judgment, supporting declarations and Proposed Judgment; and electronic filings and service of documents.

Motion at 9. Plaintiffs also seek 5 hours of work done by associate attorneys related to the December 2, 2011 hearing.

Based on Plaintiffs' documentation of attorney hours, the Court finds that attorney's fees for 19.9 hours of work done by associate attorneys and 61.92 hours of work done by paralegals is reasonable. As the Court vacated the December 2, 2011 hearing, on Plaintiffs' request, the Court will not award any additional fees for work done in relation to a hearing. Docket Nos. 42, 43.

Accordingly, the Court awards $11,001.30 in attorney's fees.

5. <u>Other Litigation Costs</u>

Finally, Plaintiffs seek $949.67 in other litigation costs in connection with this action. These litigation costs include:

(1)  $350.00 for the Complaint's filing fee;

1     (2)     $465.00 for cost of personal service of the Summons and Complaint on Defendants;

2     (3)     $100.74 for cost of delivery of pleadings to the Court for filing in this action; and

3     (4)     $33.93 for legal research.

The Ninth Circuit permits the recovery of out-of-pocket expenses that would normally be charged to a fee-paying client. *Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006). The costs sought by Plaintiffs are litigation costs that courts have awarded under § 502(g). *See N. Cal. Glaziers Pension Trust Fund*, 2011 U.S. Dist. LEXIS 119565, at *23 (recommending approval of filing fee and service costs); *Trs. of the Constr. Indus. & Laborers Health & Welfare Trust*, 460 F.3d at 1256-59 (approving of awards for computerized research, courier services, facsimile charges, and photocopies). Thus, the Court awards $949.67 in litigation costs to Plaintiffs.

### III.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' motion for default judgment. Plaintiffs are awarded $108,254.00 in withdrawal liability, $14,473.41 in interest, $21,650.80 in liquidated damages, $11,001.30 in attorney's fees for work conducted up to October 20, 2011, and $949.67 in litigation costs. The Court will not award $975.00 in anticipated attorney's fees for the hearing on this matter, which was vacated on Plaintiffs' request. The Clerk of the Court is directed to close the file in this case.

This order disposes of Docket No. 34.

IT IS SO ORDERED.

Dated: December 16, 2011

                                        EDWARD M. CHEN
                                        United States District Judge